IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DALE McDANIEL, ISREAL OWEN          )
HAWKINS, JOSHUA TRIBBLE,            )
and NICOLE TRIBBLE, individually    )
and on behalf of all others similarly situated, )
                                    )
            Plaintiffs,             )
                                    )
vs.                                 )          Case No.
                                    )
SOUTH & ASSOCIATES, P.C.,           )
                                    )
                                    )
            Defendants.             )

## COMPLAINT

Plaintiffs Dale McDaniel, Isreal Owen Hawkins, Joshua Tribble, and Nicole Tribble, on behalf

of themselves and all others similarly situated, complain as follows against defendants South &

Associates, P.C.:

### INTRODUCTION

1.      This is an action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §1692 et seq.

### JURISDICTION

2.      This Court has jurisdiction under 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

### THE PARTIES

3.      Plaintiffs, are all citizens of Kansas and "consumers" as defined by the FDCPA, 15

U.S.C. §1692a(3).

4.     Defendant South & Associates, P.C. ("South & Associates") is a professional association organized in accordance with the laws of Missouri.  South & Associates is engaged in the business of collecting consumer debts and regularly collects consumer debts in Kansas.  South & Associates is a "debt collector" as defined in the FDCPA, 15 U.S.C. §1692a(6).

## ALLEGATIONS RELEVANT TO NAMED PLAINTIFFS

### A. DALE McDANIEL

5.     On or about January 30, 2003, South & Associates sent to Dale McDaniel, via the United States Mails, the letter attached hereto as Exhibit A.  This letter was an attempt by South & Associates to collect a debt on behalf of Chase Manhattan Mortgage Corporation (hereafter "Chase Manhattan").  This letter contained the "Validation Rights Notice" required under 15 U.S.C. § 1692g.  Specifically, this letter accurately provided that Mr. McDaniel had a right to dispute the validity of the debt and request verification of the debt within thirty (30) days after Mr. McDaniel's receipt of the letter.

6.     In response to South & Associates January 30, 2003 letter, Mr. McDaniel sent the letter attached hereto as Exhibit B, via certified United States Mail, to Alan South at South & Associates.  Mr. McDaniel's letter was dated February 15, 2003 and was received by South & Associates on February 19, 2003.  A copy of the certified mail receipt is attached hereto as Exhibit C.

7.     In his letter to South & Associates dated February 15, 2003, Mr. McDaniel specifically stated that he disputed the Chase Manhattan debt attempted to be collected by South & Associates.  Mr. McDaniel's letter also requested verification of the debt and even cited his validation rights under 15 U.S.C. § 1692g.

2

8.      South & Associates never responded to Mr. McDaniel's letter disputing the debt and requesting verification of the debt.

9.      Without first validating or verifying the disputed debt, South & Associates initiated a civil lawsuit against Mr. McDaniel's for the debt by filing the "Petition to Foreclose Mortgage" attached hereto as Exhibit D.  This petition was filed on March 4, 2003, and served along with an accompanying summons on Mr. McDaniel on March 7, 2003.  The case was brought on behalf of Deutsche Bank National Trustee Company and not Chase Manhattan.

10.     As a result of South & Associates initiation of litigation against Mr. McDaniel, he has incurred actual damages and sustained significant emotional distress.

## B. ISREAL OWEN HAWKINS

11.     On or about July 18, 1995, Isreal Owen Hawkins and his wife originally entered into a Contract for Deed to purchase the real property commonly known as 3307 N. 70th Street in Kansas City, Kansas from David W. Carson and Marjorie E. Carson.  The original Contract for Deed is attached hereto as Exhibit E.  The original Contract for Deed required Isreal Owen Hawkins and his wife to make the monthly mortgage payments on the property.  On or about August 16, 1999, Isreal Owen Hawkins and his wife entered into a second Contract for Deed with David W. Carson and Marjorie E. Carson regarding the real property at 3307 N. 70th Street in Kansas City, Kansas.  A copy of the second Contract for Deed is attached hereto as Exhibit F.

12.     On or about July 22, 2001, David W. Carson and Marjorie Carson executed and filed Kansas quitclaim deed in favor of Isreal Owen Hawkins and his wife regarding the property at 3307 N. 70th Street in Kansas City, Kansas.  A copy of the quitclaim deed is attached hereto as Exhibit G.

3

13.     From July 2001 through the present date, Mr. Hawkins has dealt directly with the mortgage loan company, the loan servicer, and South & Associates regarding the mortgage on the 3307 N. 70th Street property.

14.     Although David W. Carson was the named debtor under the subject mortgage, the mortgage loan company, the loan servicer and South & Associates all knew that Mr. Hawkins resided in the property, had purchased the property under contract for deed, and was making the mortgage payments on the property.

15.     In February 2002, South & Associates began contacting Mr. Hawkins regarding the status of the mortgage payments on behalf of South & Associate's client mortgage company, as the agent of David W. Carson and based on Mr. Hawkins legal and equitable interest in the property as well as his history of making the mortgage payments on the property.

16.     On or about February 20, 2002, Mr. Hawkins drafted and sent a letter to South & Associates in the name of David W. Carson, disputing the alleged outstanding balance on the mortgage and requesting verification of the debt.  Mr. Hawkins was authorized by David W. Carson to sign this letter and send it to South & Associates.  A copy of this letter is attached as Exhibit H.

17.     Mr. Hawkins continued to dispute the alleged outstanding debt with South & Associates through March, April and May of 2002.

18.     On or about April 12, 2002, Mr. Hawkins wrote directly to the loan servicing company, Litton Loan Servicing, Inc. ("Litton"), and disputed the debt.  A copy of this letter is attached hereto as Exhibit I.

19.     On or about April 16, 2002, South & Associates sent the letter attached hereto as Exhibit J, via the United States Mails, to Mr. Hawkins residence and addressed to David W. Carson.

4

This letter was an attempt by South & Associates to collect a debt on behalf of Litton. This letter contained the "Validation Rights Notice" required under 15 U.S.C. § 1692g.

20.     Neither South & Associates nor Litton have validated the debt as requested by Mr. Hawkins (on behalf of himself and David W. Carson).

21.     Without first validating or verifying the disputed debt, South & Associates initiated a civil lawsuit against Mr. Hawkins and David W. Carson for the debt by filing a petition to foreclose on the property's mortgage. This petition was filed on May 8, 2002 and served along with an accompanying summons on Mr. Hawkins on May 10, 2002.

22.     As a result of South & Associates initiation of litigation against Mr. Hawkins, he has incurred actual damages and sustained significant emotional distress.

## C. JOSHUA AND NICOLE TRIBBLE

23.     On or about January 6, 2003, South & Associates sent to Joshua Tribble and Nichole Trible, via the United States Mails, the letters attached hereto as Exhibits K and L. These letters were an attempt by South & Associates to collect a debt on behalf of Chase Manhattan Mortgage Corporation (hereafter "Chase Manhattan"). These letters contained the "Validation Rights Notice" required under 15 U.S.C. § 1692g. Specifically, these letters accurately provided that Joshua Tribble and Michole Tribble had a right to dispute the validity of the debt and request verification of the debt within thirty (30) days after Mr. and Mrs. Tribble's receipt of the letters.

24.     In response to South & Associates January 6, 2003 letters, Mr. and Mrs. Tribble sent, by and through their attorney, the letter attached hereto as Exhibit M, via facsimile and United States Mail, to Douglas Hicks at South & Associates. This letter was dated January 27, 2003 and was

5

received by South & Associates on January 27, 2003. A copy of the verification that South and Associates received the fax is attached hereto as Exhibit N.

25.     In their letter to South & Associates dated January 27, 2003, Mr. and Mrs. Tribble specifically stated that they disputed the Chase Manhattan debt attempted to be collected by South & Associates. Mr. and Mrs. Tribble's letter also requested verification of the debt.

26.     Without first validating or verifying the disputed debt, South & Associates initiated a civil lawsuit against Mr. and Mrs. Tribble for the debt by filing the "Petition to Foreclose Mortgage" attached hereto as Exhibit O. This petition was filed on January 29, 2003, and served along with an accompanying summons on Mr. and Mrs. Tribble on February 3, 2003.

27.     As a result of South & Associates initiation of litigation against Mr. and Mrs. Tribble, they have incurred actual damages and sustained significant emotional distress.

### CLASS ALLEGATIONS

28.     Plaintiffs bring this action on behalf of themselves and behalf of all other members of the Class ("Class"). Plaintiffs tentatively define the Class as:

> All individuals who, during the one year prior to the filing of this complaint, were sent letters similar to Exhibits A, J, K and L from South & Associates, responded to the letters by disputing the debts or requesting the name and address of the original creditor, and South & Associates continued with collection activities prior to providing the individual with verification of the debt or the name and address of the original creditor.

Plaintiffs may subsequently refine the class definition in light of discovery.

29.     This action has been brought and may properly be maintained as a Class action under Rule 23(a)(1)-(4) and Rule 23(b)(1)-(3) of the Federal Rules of Civil Procedure.

6

30.    The Class is so numerous that joinder of all members is impractical.  On information and belief, letters similar to Exhibit A, J, K and L have been sent to hundreds of consumers.  Plaintiffs do not know the exact size of the Class as such information is in exclusive control of the defendant.

31.    There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  The principal question is whether defendant's conduct in failing to cease collection activities on the date defendant received notice of a dispute or request for verification from consumers and resuming collection activities before providing verification to consumers violates the FDCPA.

32.    There are no individual questions, other than whether a Class member disputed or requested verification of a debt and whether defendant continued with collection activities prior to providing the Class member with verification, which can be determined by ministerial inspection of defendants' records.

33.    Plaintiffs will fairly and adequately protect the interests of the Class.  They are committed to vigorously litigating this matter.  They are greatly annoyed at being the victim of defendants' illegal practices and wishes to see that the wrong is remedied.  To that end, they have retained counsel experienced in handling class claims and claims involving unlawful business practices. Neither plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

34.    Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

35.    A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member will likely be relatively small,

7

especially given the burden and expense of individual prosecution of the litigation. Thus, it would be virtually impossible for the Class members to individually redress effectively the wrongs done to them. Moreover, even if the Class members could each afford such individual litigation, the judicial system could not. Individualized litigations presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the judicial system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court. Management of this Class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g., for securities fraud.

36.     A class action for a debt collector's violations of the Fair Debt Collection Practices Act is contemplated and statutorily authorized by 15 U.S.C.A. § 1692k.

### COUNT I
### FAIR DEBT COLLECTION ACT VIOLATION

37.     Plaintiffs incorporate by reference paragraphs 1-36 above as though fully set forth herein.

38.     South & Associates violated 15 U.S.C. §1692g(b) by continuing collection of debts allegedly owed by the plaintiffs and other Class members after being notified by the plaintiffs and other Class members that the debts were disputed or verification of the debts was requested.

39.     South & Associates violated 15 U.S.C. § 1692g(b) by failing to cease collection activities pending its verification of a debt after notice by plaintiffs and other Class members that the debts were disputed or verification of the debts was requested.

8

40.     Plaintiffs seek only statutory damages against the defendants on their behalf and on behalf of all similarly situated individuals as provided by 15 U.S.C.A. § 1692k.

41.     Plaintiffs seek the costs of this action together with their reasonable attorneys' fees as provided by 15 U.S.C.A. § 1692k.

### *PRAYER FOR RELIEF*

WHEREFORE, plaintiffs, individually and on behalf of the other members of the Class, request judgment against the defendant and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a Class action under Rule 23 of the Federal Rules of Civil Procedure, that plaintiffs be appointed as a Class Representatives, and plaintiffs' counsel be appointed Class Counsel;

B.     The conduct of defendants in continuing collection activities after they have received notice from a consumer of a dispute to a debt and prior to providing the consumer with verification of the debt be adjudged and decreed to be violations of the Fair Debt Collection Practices Act.

C.     A judgment entered against defendant and in favor of plaintiffs and each member of the Class they represent in an amount that is reasonable to compensate them for their damages, statutory damages and attorney fees as provided by law and statute;

D.     An order permanently enjoining and restraining defendant from continuing collection activities after receiving dispute of a debt and prior to providing

verification of the debt, which is alleged herein to be in violation of the Fair

Debt Collection Practices Act, and for such other and further relief as the Court

may deem just, fair and equitable.

Respectfully submitted,

**HILL, BEAM-WARD & KRUSE, L.L.C.**

_____

W. GREG WRIGHT, KS # 18352
GEOFFREY CLARK, KS # 18909
MARK BEAM-WARD, KS # 10071
8695 College Boulevard, Suite 200
Overland Park, Kansas 66210
(913) 339-6888
(913) 339-9653 facsimile
*ATTORNEYS FOR PLAINTIFFS*

10



Attorneys At Law
4600 Madison Suite 801
Kansas City, Missouri 64112-3037
Phone: 816/300-7800
Fax: 816/300-7899
www.southlaw.com

1/30/2003

Dale McDaniel          (34401)
9133 Ann Avenue
Kansas City, KS  66112

Re:   Lender: Chase Manhattan Mortgage Corporation (CA)
      Unpaid Principal Amount of the Debt: $84,402.96
      Loan No. 2576395
      Property Address: 9133 Ann Avenue, Kansas City, KS  66112
      File No. 34401

Dear Consumer:

This letter is to give you notice required under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692a-1692o. The Law Firm of South & Associates, P.C., (the "Law Firm") has been retained by the Lender to collect the debt concerning the above-referenced property. The debt referred to above does not include accrued interest or other charges under the written agreements or allowable by state law.

Unless you, within thirty (30) days after receipt of this letter (the "thirty (30) day period"), dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the Law Firm. If you notify the Law Firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, the Law Firm will obtain verification of the debt and will forward that verification to you. If the debt is founded upon a judgment, a copy of the judgment will be mailed to you.

Upon your written request within the thirty (30) day period the Law Firm will provide you with the name and address of the original creditor, if different from the current creditor. You are put on notice that the Law Firm is attempting to collect a debt as defined in the Fair Debt Collection Practices Act and any information obtained by the Law Firm will be used for that purpose.

If you are or have been a chapter 13 bankruptcy debtor, and relief was obtained from the automatic stay imposed by 11 U.S.C. §362 in your bankruptcy proceeding, and thereafter you converted to a chapter 7 and a discharge was granted to you, you will have no personal liability for the above captioned loan. If you are or were a Chapter 7 debtor and this debt was listed in your schedules and not reaffirmed, and thereafter a discharge was granted to you, you will have no personal liability for the above captioned loan.



EXHIBIT
A

1/30/2003
File No. 34401

Page 2

If you have any questions concerning your rights under the Fair Debt Collection Practices Act or any other federal or state law you should seek legal counsel immediately. The Law Firm cannot give you legal advice as to your rights.

Under the terms of the security instrument that secures the debt on the above property, you may have rights to reinstate the debt prior to foreclosure. For further information, contact our office at the following numbers:

- If the Property is located in Kansas, call 816-300-7800 (Extension 146)
- If the Property is located in Missouri, call 816-300-7800 (Extension 107 or 120)

Sincerely,

Alan E. South
FOR THE FIRM

February 15, 2003

South Associates
Attorneys at Law
4600 Madison Ave., Suite 801
Kansas City, MO 64112-3037

CC: Chase Manhattan Mortgage
P.O Box 509011
San Diego, CA 92150
Attn: Josefina Palmer

Mr. Alan Scott,

In receipt our your letter dated 1/30/2003, I would like to make a formal dispute of those claims. I know my rights as a Kansas homeowner and the rights given under the **FAIR DEBT COLLECTION PRACTICES ACT, § 809. Validation of debts [15 USC 1692g]**

*(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.*

I am requesting the verification of this debt in writing and within my thirty day (30) rights of the consumer. .

Sincerely,

Dale McDaniel

Dale McDaniel
133 And Ave
Kansas City, KS 66112

EXHIBIT
B



UNITED STATES POSTAL SERVICE

• Sender: Please print your name, address, and ZIP+4 in this box •

Dale McDow
9133 Ann Ave.
Kansas City, KS 66112

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10



EXHIBIT

## SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Alan Scott
Herron/Madison 801
FL 190611/2

2.

PS

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Karen Sprull    ☐ Agent
                  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                  2/19/03

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

102595.02-M-1035

# IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
## CIVIL DEPARTMENT

|  |  |
|---|---|
| Deutsche Bank National Trustee Company, as Custodian or Trustee, f/k/a Bankers Trust Company of California, N.A. <br><br> Plaintiff, <br><br> vs. <br><br> Dale McDaniel; John Doe (Tenant/Occupant); Mary Doe (Tenant/Occupant); Beneficial Kansas, Inc.; and the unknown heirs, executors, administrators, devisees, trustees, creditors and assigns of any deceased defendants; the unknown spouses of any defendants; the unknown officers, successors, trustees, creditors and assigns of any defendants that are existing, dissolved or dormant corporations; the unknown executors, administrators, devisees, trustees, creditors, successors and assigns of any defendants that are or were partners or in partnership; the unknown guardians, conservators and trustees of any defendants that are minors or are under any legal disability; and the unknown heirs, executors, administrators, devisees, trustees, creditors and assigns of any person alleged to be deceased, and all other persons who are or may be concerned. <br><br> Defendants. | Case No. 03C1895 <br><br> Court Number: <br><br> Pursuant to K.S.A. Chapter 60 <br><br> Title to Real Estate Involved |

## PETITION TO FORECLOSE MORTGAGE

COMES NOW Plaintiff, Deutsche Bank National Trustee Company, as Custodian or Trustee, f/k/a Bankers Trust Company of California, N.A., a corporation, by and through its attorney, Michael L. Zevitz of the firm of South & Associates, P.C., and for its cause of action against Defendants states as follows:

1.  Plaintiff is a business organization created and existing by virtue of law.

2.  Dale McDaniel is a resident of Wyandotte County, Kansas, and may be served with process at 9133 Ann Avenue, Kansas City, KS  66112.

File No. 34401                                    1



3.   John Doe (Tenant/Occupant) and/or Mary Doe (Tenant/Occupant) may be served with process at 9133 Ann Avenue, Kansas City, KS 66112.

4.   Beneficial Kansas, Inc. may be served with process, in c/o The Corporation Company, Inc. at 515 S. Kansas Avenue, Topeka, KS 66603.

5.   Plaintiff seeks to serve by publication all those unknown parties as set forth in K.S.A. §60-307.

6.   On December 5, 1996, Dale McDaniel executed and delivered a promissory note (the "Note") to Equi-Financial L.P., in exchange for good and valuable consideration, in the principal sum of $79,000.00, together with interest.  The Note provides that the principal and interest are payable in monthly installments until fully paid.

7.   On December 5, 1996, Dale McDaniel executed and delivered a mortgage (the "Mortgage") to Equi-Financial L.P., to secure repayment of the Note.  A copy of the Mortgage is attached as Exhibit "A" and incorporated by reference.  The Mortgage was secured by real estate legally described as: **Lot 11, ROSEMONT, a subdivision of land in Kansas City, Wyandotte County, Kansas, according to the recorded plat thereof.**, commonly known as 9133 Ann Avenue, Kansas City, KS 66112 (the "Property").

8.   The Mortgage was recorded on December 10, 1996, Document No. 1234613, in Book No. 3861, at Page 57, in the office of the Register of Deeds of Wyandotte County, Kansas.  The mortgage registration tax was paid in full.

9.   John Doe (Tenant/Occupant) and/or Mary Doe (Tenant/Occupant) are named by virtue of his/her occupancy of the Property.  Any interest that John Doe and/or Mary Doe have in the Property is junior and inferior to Plaintiff's Mortgage.

10. Deutsche Bank National Trustee Company, as Custodian or Trustee, f/k/a Bankers Trust Company of California, N.A. is now the owner and holder of the Note and Mortgage. The Mortgage constitutes a first and prior lien against the Property.

11. Beneficial Kansas, Inc. has been named by virtue of a mortgage securing a debt in the principal amount of $7,393.63. The mortgage was recorded in the office of the Wyandotte County, Kansas, Register of Deeds in Book 3904 at Page 114. Beneficial Kansas, Inc. may claim an interest in the Property, but any such interest would be junior and inferior to Plaintiff's Mortgage.

12. None of the Defendants are subject to the provisions of the Soldier's and Sailor's Civil Relief Act of 1940, as amended.

13. Dale McDaniel failed to make the installment payments as they became due since October 5, 2002. The payments on the Note still remain due and owing. Pursuant to the terms of the Note and Mortgage, Plaintiff has declared the entire indebtedness due and payable as follows: **a)** the unpaid principal balance of the Note in the sum of $84,402.96; **b)** the unpaid interest accruing at the rate provided in the Note from and after September 5, 2002; **c)** all sums advanced by Plaintiff for title evidence in bringing this action; **d)** all sums advanced or to be advanced by Plaintiff prior to sale for real estate taxes and hazard insurance premiums; **e)** accrued late charges; **f)** all sums paid by Plaintiff or due from the Defendant prior to sale for insufficient funds charges, property inspections or property maintenance expenses; and **g)** the costs of this action, including reasonable attorney fees, if allowed.

14. Plaintiff is entitled to have its Mortgage foreclosed as a first and prior lien upon the Property. All of the defendants have or may claim to have some right, title or interest in or to the Property, but any such claim is inferior and subject to the lien of Plaintiff's Mortgage and should be so adjudged.

15. Less than one-third of the original principal amount of the Note and Mortgage has been paid, and therefore the Defendants' redemption period should be fixed at 3 months from the date of the Sheriff's sale. Once the redemption period has expired, Plaintiff or the holder of the Certificate of Purchase shall be entitled to a writ of assistance directing the Sheriff to immediately place it or the holder in possession of the Property and its improvements.

16. If any Defendant Borrower is or has been a chapter 13 bankruptcy debtor, and the Plaintiff has obtained relief from the automatic stay imposed by 11 U.S.C. §362 in a bankruptcy proceeding, and thereafter Defendant Borrower converted to a chapter 7 and a discharge was granted, that Defendant Borrower will have no personal liability in this action. If the Defendant Borrower was a Chapter 7 debtor and this debt was listed in Defendant Borrower's schedules and not reaffirmed, and thereafter a discharge was granted, then that Defendant Borrower will have no personal liability in this action.

17. Dale McDaniel filed for relief under Chapter 13 of the United States Bankruptcy Code in the District of Kansas in Case No 98-20363. The bankruptcy case was dismissed on 6/16/1998.

WHEREFORE, Plaintiff prays for judgment against Dale McDaniel in the sum of $84,402.96, together with interest thereon at the rate provided in the Note from September 5, 2002, to the date of judgment, and thereafter at the highest rate provided by law until paid; all sums advanced by Plaintiff for title evidence in bringing this action; the sum of $110.00 for filing costs; reasonable attorney fees if provided for by statute; all sums paid by Plaintiff or due from the Defendant prior to sale for late charges, insufficient funds charges, property inspections or maintenance expenses; and all sums advanced or to be advanced by Plaintiff prior to the sale for real estate taxes and insurance premiums.

Plaintiff further prays that its Mortgage be declared a first and prior lien on the Property; that its Mortgage be foreclosed; that all junior and inferior liens and mortgages be barred from

claiming any right, title, or interest in the subject property; that the Court order and direct the sale of the Property according to law, subject to a legal redemption period of **3** months, for the satisfaction of the money judgment or any balance remaining unpaid; for possession of the Property after the redemption period has expired; and for such other relief as the Court may deem just and equitable.

SOUTH & ASSOCIATES, P.C.

Michael L. Zevitz  (KS #14850, MO #30960)
4600 Madison, Suite. 801
Kansas City, Missouri  64112
(816) 300-7800, extension 105
(816) 300-7899  (Fax)

ATTORNEYS FOR PLAINTIFF

**THE LAW FIRM OF SOUTH & ASSOCIATES, P.C., A DEBT COLLECTOR, IS ATTEMPTING TO COLLECT A DEBT AS DEFINED BY THE FAIR DEBT COLLECTION PRACTICES ACT AND ANY INFORMATION OBTAINED BY THE LAW FIRM WILL BE USED FOR THAT PURPOSE.**

FEB-18-03 TUE 01:52 PM

FAX NO.

P. 10/22

C/O REPUBLIC TITLE COMPANY OF KANSAS CITY, INC.

95130289-6 ②

Equi-Financial
1275 Wampanoag Trail
East Providence, RI 02915
Attn: Closing Department

BOOK 3861 PAGE 57

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **December 5, 1996**                    . The mortgagor is

**Dale McDaniel, a single person**

("Borrower"). This Security Instrument is given to

**Equi-Financial, L.P.**

which is organized and existing under the laws of **Delaware**                    , and whose
address is **1275 Wampanoag Trail, East Providence, RI 02915**
("Lender"). Borrower owes Lender the principal sum of

**Seventy nine thousand and no/100**------------Dollars (U.S. $ **79,000.00**        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **December 5, 2011**                .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in    **Wyandotte**                               County, Kansas:

**Lot 11, ROSEMONT, a subdivision of land in Kansas City, Wyandotte County, Kansas.**

which has the address of **9133 Ann Avenue, Kansas City**                    [Street, City],
**Kansas**      **66112**     [Zip Code] ("Property Address");

KANSAS - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT
Form 3017  9/90
Amended 8/91

EXHIBIT "A"

FEB-18-03 TUE 01:52 PM                          FAX NO.                          P. 11/22

BOOK 3861 PAGE 59

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3017  9/90

FEB-18-03 TUE 01:53 PM                          FAX NO.                          P. 12/22

3861 PAGE 59

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3017  9/90

Page 3 of 6

BOOK 581 PAGE 60

payment may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3017   9/80

Page 4 of 6

FEB-18-03 TUE 01:55 PM                                    FAX NO.                              P. 14/22

BOOK 3861 PAGE 61

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

23. Waiver of Redemption. Borrower waives all rights of redemption to the extent allowed by law.

24. Attorneys' Fees. The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.

Form 3017 9/91

Page 6 of 6

TUE 01:56 PM

FAX NO.

P. 15/22

ᴇᴋ 3861 ᴘᴀɢᴇ 02

123-515

STATE OF KS.
WYANDOTTE COUNTY
FILED FOR RECORD
95 DEC 18 P 3:44
THOMAS W. GRONEMAN
REGISTER OF DEEDS
BY                    DEP.

FEE $
AMOUNT OF INDEBTEDNESS $
THOMAS W. GRONEMAN
REGISTER OF DEEDS  WYANDOTTE CO., KAN.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[ ] Adjustable Rate Rider          [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] Graduated Payment Rider        [ ] Planned Unit Development Rider [ ] Biweekly Payment Rider
[X] Balloon Rider                  [ ] Rate Improvement Rider         [ ] Second Home Rider
[ ] V.A. Rider                     [ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____                    _____ (Seal)
DENISE K. HINKLE                                    DALE McDANIEL                    -Borrower

_____                    _____ (Seal)
                                                                                    -Borrower

_____ (Seal)             _____ (Seal)
                       -Borrower                                                    -Borrower

STATE OF KANSAS,    Wyandotte                        County ss:

BE IT REMEMBERED, that on this   5th       day of   December   , 1996   , before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared
Dale McDaniel, a single person
                                                                          , to me personally
known to be the same person(s) who executed the above and foregoing instrument of writing, and duly acknowledged the execution of same.
IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal on the day and year last above written.

My Commission Expires: September 28, 1997         _____
                                                   Notary Public

DENISE K. HINKLE
My Comm. Expires 9-28-97                            DENISE K. HINKLE
                                                   Type Name

                                                   Page 6 of 6                     Form 3017  9/90

## CONTRACT FOR DEED

**NOW,** on this 18th day of July, 1995, this contract for deed is made and entered into by and between the owners of the property located at 3307 N. 70th Street and legally described as Lot 4, WEST MEADOWS, now in and a part of Kansas City, Wyandotte County, Kansas, who are David W. Carson and Marjorie E. Carson, and Isreal Owen Hawkins, Jr. and Ramona Hawkins (husband and Wife).

**NOW BE IT AGREED** that the parties of the first part, David W. Carson and Marjorie E. Carson as owners, are selling to Isreal Owen Hawkins, Jr. and Ramona Hawkins, as parties of the second part and herein after designated as buyers, the above described and numbered real estate. That the conditions of this contract for deed are as follows:

1. That the owners have arranged to purchase said above described property and have put up the requisite down payment of Fifteen-Thousand, One-Hundred, Seventy-Four Dollars and Ninety-Three cents ($15,174.93) and have obligated themselves on a mortgage to Mercantile Bank of Kansas City for the balance due on the purchase price, to-wit: Fifty-Four Thousand, Eight-Hundred Dollars ($54,800.00).

2. Now therefore be it understood that the buyers hereby contract and agree to make the mortgage payments to the Mercantile Bank in the amount of Five-Hundred, Forty-Nine Dollars and Thirty Cents ($549.30) together with a One-Hundred and Fifty Dollars ( $150.00) a month payment to the owners commencing the 1st of September, 1995.

3. That the buyers do hereby obligate themselves to pay the mortgage payments to the Mercantile Bank, whenever the same shall commence, and One-Hundred and Fifty Dollars ($150.00) a month to the owners, commencing the 1st of September, 1995, until the total amount of Fifteen-Thousand, One-Hundred and Seventy-Four Dollars and Ninety-Three cents



EXHIBIT
E

($15,174.93) has been paid to the owners. This being the amount that the owners have advanced for the down-payments and other acquisition costs of the property. This Fifteen-Thousand, One-Hundred and Seventy-Four Dollars and Ninety-Three Cents ($15,174.93) shall bear interest at the rate of 8 1/2 percent simple interest per annum commencing the 18th day of July, 1995

4. Of Course, the buyers will also be obligated to pay the mortgage payments to the Mercantile Bank.

5. The buyers shall have the right to reduce this contract for deed, at any given amount, at any time, with no penalty.

6. That when the total amount including the Fifty-Four Thousand, Eight-Hundred Dollars ($54,800.00) mortgage to Mercantile Bank and the Fifteen-Thousand, One-Hundred and Ninety-Four Dollars and Ninety-Three cents ($15,173.94) down payment money to the owners has been paid out in full, then the owners shall furnish to the buyers a good and valid deed to the above described properties.

_____
DAVID W. CARSON/Owner

_____
MARJORIE E. CARSON/Owner

_____
ISREAL OWEN HAWKINS, JR./Buyer

_____
RAMONA HAWKINS/Buyer

## *CONTRACT FOR DEED*

This indenture, made this 16th day of August, 1999, between Isreal Owen Hawkins and Ramona Hawkins, husband and wife, of Wyandotte County, Kansas, parties of the first part and buyers hereunder, and David W. Carson and Marjorie E. Carson, husband and wife, of Wyandotte County, Kansas, parties of the second part and buyers hereunder:

*WITNESSETH WHEREAS* parties of the second part are the owners of certain real property known and number as follows:

*WEST MEADOWS, LOT 4 now in and a part of Wyandotte County, Kansas City, Kansas commonly known as 3307 N. 70th Street, Kansas City, Kansas 66109*

*WHEREAS* parties of the first part are desirous of and have commenced the purchase from the parties of the second part of said above described property.

*THEREFORE* let it be agreed by and between the parties that the parties of the second part will sell to the parties of the first part the above-described real estate for the sum of $68,800.00.  Parties of the second part due hereby and herewith agree to sell to the parties of the first part the above described real estate as follows:  No down payment, with payments of $559.78 per month beginning September 5, 1999, the parties of the first part having already paid the first payment.

In witness whereof, parties hereunto set their hands and seal the day and year first above written.

_Isreal Owen Hawkins_
ISREAL OWEN HAWKINS

_David W. Carson_
DAVID W. CARSON

_Ramona Hawkins_
RAMONA HAWKINS

_Marjorie Carson_
MARJORIE E. CARSON

EXHIBIT
G

STATE OF KANSAS      )
                      )ss:
COUNTY OF WYANDOTTE  )

      BE IT REMEMBERED that on this 16th day of August, 1999 by me the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared ISREAL OWEN HAWKINS who is personally known to me to be the party who signed the above and forgoing Agreement and duly acknowledged the execution thereof as his act and the deed for the purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

> **AMY B. SMITH**
> Notary Public - State of Kansas
> My Appt. Expires 7-6-02

NOTARY PUBLIC

My Appointment Expires:
7-6-02

STATE OF KANSAS      )
                      )ss.
COUNTY OF WYANDOTTE  )

      BE IT REMEMBERED that on this 16th day of August, 1999 by me the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared  RAMONA HAWKINS who is personally known to me to be the party who signed the above and forgoing Agreement and duly acknowledged the execution thereof as her act and the deed for the purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

> **AMY B. SMITH**
> Notary Public - State of Kansas
> My Appt. Expires 7-6-02

NOTARY PUBLIC

My Appointment Expires:
7-6-02

STATE OF KANSAS      )
                      )ss.
COUNTY OF WYANDOTTE  )

      BE IT REMEMBERED that on this 16th day of August, 1999 by me the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared DAVID W. CARSON who is personally known to me to be the party who signed the above and forgoing Agreement and duly acknowledged the execution thereof as his act and the deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

AMY B. SMITH
Notary Public - State of Kansas
My Appt. Expires 2-6-02

My Appointment Expires:
_____

NOTARY PUBLIC

STATE OF KANSAS      )
                     )ss.
COUNTY OF WYANDOTTE  )

BE IT REMEMBERED that on this 16th day of August, 1999 by me the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared MARJORIE E. CARSON who is personally known to me to be the party who signed the above and forgoing Agreement and duly acknowledged the execution thereof as her act and the deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year first above written.

AMY B. SMITH
Notary Public - State of Kansas
My Appt. Expires

My Appointment Expires:
_____

NOTARY PUBLIC

# KANSAS QUITCLAIM DEED

On this  22nd day of  July, 2001

David W. Carson and Marjorie E. Carson

BOOK 4310 PAGE 274

("Grantor(s)") QUITCLAIM(S) to

Isreal Owen Hawkins and Ramona Hawkins

("Grantee(s)") all of the following-described real estate in                   Wyandotte         County, Kansas:

Lot 4, West Meadows, now in and a part of Kansas City, Kansas, Wyandotte County, Kansas

3307 North 70 Street, Kansas City, Ks 66109

STATE OF KANSAS
WYANDOTTE COUNTY KANSAS CITY
Entered in transfer record in my office
this ____ on ____

Unified Government Clerk

By _____ Deputy

for the sum of        $1.00 and other valuable considerations

SUBJECT TO:

**EXHIBIT**
G

Printed Name:
David W. Carson

Printed Name:
Marjorie E. Carson

STATE OF                    )

Reserved for Register of Deeds

Dave Carson
3307 N. 70th St.
Kansas City, Kansas 66109
(913) 334-0154
(913) 596-1300 office

2/20/02

Alan E. South / 4600 Madison, Suite 801
Attorney at Law
Kansas City, Missouri 64112
LOAN NO. 7966211

Dear Sir:

This letter is to give notice that we Dispute
the balance owed, We have informed Litton
Loan service that passed due payments were made
in 12-19-2001, Ms. Dianne Kilgore from litton serving
confirmed this agreement by letter dated December
19, 2001. Also January and February payments were
made. I also spoke to several Litton Representative
on February 7, and 11, 2002, Enclosed is letter from
Dianne Kilgore and the copy of payments made. We resent
that our payments aren't being applied properly.

Sincerely

Dave Carson

P.S
We are requesting
that litton get a Complete
Payment History from Washington Mutual
from January of 2001 to Dec 2001
.... the loan was transferred!



EXHIBIT
H

Dave Carson
3307 N. 70th St
Kansas City. Kansas
(913) 334-0154 hom
(913) 596-1300 off

This Letter
Was faxed to
Letter Lition on

4-12-02

4-12-02
See faxed
Cover sheet

Mr. Larry Litton
Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081
Re: Loan Number 07966211

Dear Mr. Litton:

I recently authorized payment $1,120. through Security bank. The Money was in the bank on 4-2-02 and is still in the bank. The Bank informed me that Litton did not send or give the account Number which is required to receive the funds.

Enclosed is proof that the funds were their, a copy of the bank account record are also enclosed.

I'am also disputing the balance that is owed that was transferred from Washington Mutual.

Sincerely

Dave Carson

CC: South Associates, P.C
Alan South
File No. 27200

EXHIBIT
I



*Dispute letter was sent on 4-12-02*

*Lawsuit was Filed before the 30 days*

4/16/02

David W. Carson          (27200)
3307 N. 70th Street
Kansas City, KS 66102

Re:   Lender: Litton Loan Servicing, Inc.
      Unpaid Principal Amount of the Debt: $67,594.47
      Loan No. 7966211
      Property Address: 3307 N. 70th Street, Kansas City, KS 66102
      File No. 27200

Dear Consumer:

This letter is to give you notice required under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692a-1692o. The Law Firm of South & Associates, P.C., (the "Law Firm") has been retained by the Lender to collect the debt concerning the above-referenced property. The debt referred to above does not include accrued interest or other charges under the written agreements or allowable by state law.

Unless you, within thirty (30) days after receipt of this letter (the "thirty (30) day period"), dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the Law Firm. If you notify the Law Firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, the Law Firm will obtain verification of the debt and will forward that verification to you. If the debt is founded upon a judgment, a copy of the judgment will be mailed to you.

Upon your written request within the thirty (30) day period the Law Firm will provide you with the name and address of the original creditor, if different from the current creditor. You are put on notice that the Law Firm is attempting to collect a debt as defined in the Fair Debt Collection Practices Act and any information obtained by the Law Firm will be used for that purpose.

If you are or have been a chapter 13 bankruptcy debtor, and relief was obtained from the automatic stay imposed by 11 U.S.C. §362 in your bankruptcy proceeding, and thereafter you converted to a chapter 7 and a discharge was granted to you, you will have no personal liability for the above captioned loan. If you are or were a Chapter 7 debtor and this debt was listed in your schedules and not reaffirmed, and thereafter a discharge was granted to you, you will have no personal liability for the above captioned loan.

EXHIBIT
tabbies
J

4/16/02
File No. 27200

Page 2

If you have any questions concerning your rights under the Fair Debt Collection Practices Act or any other federal or state law you should seek legal counsel immediately.  The Law Firm cannot give you legal advice as to your rights.

Under the terms of the security instrument that secures the debt on the above property, you may have rights to reinstate the debt prior to foreclosure.  For further information, contact our office at the following numbers:

- If the Property is located in Kansas, call 816-300-7800 (Extension 146)
- If the Property is located in Missouri, call 816-300-7800 (Extension 107 or 120)

Sincerely,

John E. South
FOR THE FIRM



South

**ASSOCIATES, P.C.**

Attorneys At Law
4600 Madison, Suite 801
Kansas City, Missouri 64112-3037
Phone: 816/300-7800
Fax: 816/300-7899
*www.southlaw.com*

1/6/2003

Joshua M. Tribble          (27838)
8110 W. 149th Terrace
Overland Park, KS  66223

Re:   Lender: Chase Manhattan Mortgage Corporation (Columbus)
      Unpaid Principal Amount of the Debt: $120,864.16
      Loan No. 1956926381
      Property Address: 8110 W. 149th Terrace, Overland Park, KS  66223
      File No. 27838

Dear Consumer:

This letter is to give you notice required under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692a-1692o. The Law Firm of South & Associates, P.C., (the "Law Firm") has been retained by the Lender to collect the debt concerning the above-referenced property. The debt referred to above does not include accrued interest or other charges under the written agreements or allowable by state law.

Unless you, within thirty (30) days after receipt of this letter (the "thirty (30) day period"), dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the Law Firm.  If you notify the Law Firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, the Law Firm will obtain verification of the debt and will forward that verification to you.  If the debt is founded upon a judgment, a copy of the judgment will be mailed to you.

Upon your written request within the thirty (30) day period the Law Firm will provide you with the name and address of the original creditor, if different from the current creditor.  You are put on notice that the Law Firm is attempting to collect a debt as defined in the Fair Debt Collection Practices Act and any information obtained by the Law Firm will be used for that purpose.

If you are or have been a chapter 13 bankruptcy debtor, and relief was obtained from the automatic stay imposed by 11 U.S.C. §362 in your bankruptcy proceeding, and thereafter you converted to a chapter 7 and a discharge was granted to you, you will have no personal liability for the above captioned loan.  If you are or were a Chapter 7 debtor and this debt was listed in your schedules and not reaffirmed, and thereafter a discharge was granted to you, you will have no personal liability for the above captioned loan.



EXHIBIT

K

1/6/2003
File No. 27838

Page 2

If you have any questions concerning your rights under the Fair Debt Collection Practices Act or any other federal or state law you should seek legal counsel immediately.  The Law Firm cannot give you legal advice as to your rights.

Under the terms of the security instrument that secures the debt on the above property, you may have rights to reinstate the debt prior to foreclosure.  For further information, contact our office at the following numbers:

- If the Property is located in Kansas, call 816-300-7800 (Extension 146)
- If the Property is located in Missouri, call 816-300-7800 (Extension 107 or 120)

Sincerely,

Alan E. Scott
FOR THE FIRM



Attorneys At Law
4600 Madison, Suite 801
Kansas City, Missouri 64112-3037
Phone: 816/300-7800
Fax: 816/300-7899
www.southlaw.com

1/6/2003

Nichole M. Tribble          (27838)
8110 W. 149th Terrace
Overland Park, KS  66223

Re:   Lender: Chase Manhattan Mortgage Corporation (Columbus)
      Unpaid Principal Amount of the Debt: $120,864.16
      Loan No. 1956926381
      Property Address: 8110 W. 149th Terrace, Overland Park, KS  66223
      File No. 27838

Dear Consumer:

This letter is to give you notice required under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692a-1692o.  The Law Firm of South & Associates, P.C., (the "Law Firm") has been retained by the Lender to collect the debt concerning the above-referenced property. The debt referred to above does not include accrued interest or other charges under the written agreements or allowable by state law.

Unless you, within thirty (30) days after receipt of this letter (the "thirty (30) day period"), dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the Law Firm.  If you notify the Law Firm in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, the Law Firm will obtain verification of the debt and will forward that verification to you.  If the debt is founded upon a judgment, a copy of the judgment will be mailed to you.

Upon your written request within the thirty (30) day period the Law Firm will provide you with the name and address of the original creditor, if different from the current creditor.  You are put on notice that the Law Firm is attempting to collect a debt as defined in the Fair Debt Collection Practices Act and any information obtained by the Law Firm will be used for that purpose.

If you are or have been a chapter 13 bankruptcy debtor, and relief was obtained from the automatic stay imposed by 11 U.S.C. §362 in your bankruptcy proceeding, and thereafter you converted to a chapter 7 and a discharge was granted to you, you will have no personal liability for the above captioned loan.  If you are or were a Chapter 7 debtor and this debt was listed in your schedules and not reaffirmed, and thereafter a discharge was granted to you, you will have no personal liability for the above captioned loan.

EXHIBIT

L

1/6/2003
File No. 27838

Page 2

If you have any questions concerning your rights under the Fair Debt Collection Practices Act or any other federal or state law you should seek legal counsel immediately. The Law Firm cannot give you legal advice as to your rights.

Under the terms of the security instrument that secures the debt on the above property, you may have rights to reinstate the debt prior to foreclosure. For further information, contact our office at the following numbers:

- If the Property is located in Kansas, call 816-300-7800 (Extension 146)
- If the Property is located in Missouri, call 816-300-7800 (Extension 107 or 120)

Sincerely,

Alan E. South
FOR THE FIRM

# HILL, BEAM-WARD & KRUSE, LLC

**ATTORNEYS AT LAW**
BANK OF AMERICA, SUITE 200
8695 COLLEGE BOULEVARD
OVERLAND PARK, KANSAS 66210-1871
(913) 339-6888
FAX (913) 339-9653
firm e-mail: hbwk@planetkc.com
e-mail: hbwkgclark@planetkc.com

THOMAS R. HILL*
MARK BEAM-WARD
KEVIN J. KRUSE*
CHRISTOPHER T. WILSON*

W. GREG WRIGHT*
JASON J. FLETES*
GEOFFREY CLARK*

DAVID R. McLAIN
OF COUNSEL

ALL ADMITTED IN KANSAS
*ADMITTED IN MISSOURI

MISSOURI OFFICE

9233 WARD PARKWAY
SUITE 240
KANSAS CITY, MISSOURI 64114-3311
(816) 523-9010

KANSAS CITY, KANSAS OFFICE

816 N 9TH STREET
KANSAS CITY, KANSAS 66101
(913) 334-0220

January 27, 2003

Douglas Hicks
South and Associates, PC
4600 Madison, Suite 801
Kansas City, MO 64112

*Fax only: (816) 300-7899*

Re:   Lender:        Chase Manhattan Mortgage Corporation
      Loan No.:      1956926381
      My clients:    Joshua and Nicole Tribble

Dear Mr. Hicks:

Please be advised that I represent the Tribbles in the above-referenced matter. They have provided me with your collection letter of January 6, 2003. As you may be aware, since April of 2002 your clients have refused the timely monthly mortgage payments made by my clients. The reason that was given was that my clients had missed a mortgage payment and Chase would not accept partial payments. It is my understanding that Chase moved for relief from the automatic stay in my clients' bankruptcy case four times and was denied each time because Chase could not show that the Tribbles were behind on payments. In early December, 2002, Chase and my clients came to an agreement whereby the Tribbles would pay $9,585.51 by January 2, 2003, which would cure any alleged default on the loan. A copy of a letter memorializing this letter is enclosed. The certified funds were overnighted to Chase and received on January 2, 2003. The certified check was returned to my clients by Chase with a notation that this would not cure the default.

My clients hereby dispute the validity of the debt your firm alleges in its letter dated January 6, 2003, and request a detailed verification of your allegations. Further, pursuant to 12 U.S.C. § 2605 we are hereby demanding that you provide a detailed calculation of any debt alleged.



EXHIBIT

M

I would appreciate it if you would contact me at your earliest convenience so that we can attempt to resolve this matter. It appears that Chase and my clients came to a settlement in this case which your clients have breached. My clients remain ready and willing to abide by the settlement and to continue to make their regular payments. However, Chase has consistently frustrated attempts to abide by the mortgage and it appears that any breach in this agreement was caused by Chase.

Please contact me at your earliest convenience regarding this matter.

Sincerely,

Geoffrey Clark

cc: clients

P. 1

```
* * * COMMUNICATION RESULT REPORT ( JAN.28.200_  5:32PM ) * * *
                                                    TTI
```

| FILE | MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|------|------|--------|-----------------|--------|------|
| 105 | MEMORY TX | | 8163007899 | OK | P. 3/3 |

```
------------------------------------------------------------------------
 REASON FOR ERROR
         E-1) HANG UP OR LINE FAIL            E-2) BUSY
         E-3) NO ANSWER                       E-4) NO FACSIMILE CONNECTION
```

# HILL, BEAM-WARD, KRUSE & WILSON, LLC

### ATTORNEYS AT LAW
BANK OF AMERICA, SUITE 200
8695 COLLEGE BOULEVARD
OVERLAND PARK, KANSAS 66210-1871
(913) 339-6888
FAX (913) 339-9653
e-mail: hbwkw@hbwkwlaw.com

THOMAS R. HILL*
MARK BEAM-WARD
KEVIN J. KRUSE*
CHRISTOPHER T. WILSON*

W. GREG WRIGHT*
JASON J. FLETES*
GEOFFREY CLARK*
LISA MATURO*

DAVID R. McLAIN
OF COUNSEL

ALL ADMITTED IN KANSAS
*ADMITTED IN MISSOURI

**MISSOURI OFFICE**

9233 WARD PARKWAY
SUITE 240
KANSAS CITY, MISSOURI 64114-3311
(816) 523-9010

**KANSAS CITY, KANSAS OFFICE**

815 N. 9TH STREET
KANSAS CITY, KANSAS 66101
(913) 334-0220

# FACSIMILE TRANSMISSION

**Date:**       January 28, 2003

**To:**         Douglas Hicks

**Fax:**        (816) 300-7899

**From:**       Geoff Clark

**Re:**         Joshua and Nicole Tribble
                Loan No. 1956926381

**No. of pages to follow:**       2



EXHIBIT

N

# HILL, BEAM-WARD, KRUSE & WILSON, LLC

ATTORNEYS AT LAW
BANK OF AMERICA, SUITE 200
8695 COLLEGE BOULEVARD
OVERLAND PARK, KANSAS 66210-1871
(913) 339-6888
FAX (913) 339-9653
e-mail: hbwkw@hbwkwlaw.com

THOMAS R. HILL*
MARK BEAM-WARD
KEVIN J. KRUSE*
CHRISTOPHER T. WILSON*

W. GREG WRIGHT*
JASON J. FLETES*
GEOFFREY CLARK*
LISA MATURO*

DAVID R. McLAIN
OF COUNSEL

ALL ADMITTED IN KANSAS
*ADMITTED IN MISSOURI

MISSOURI OFFICE

9233 WARD PARKWAY
SUITE 240
KANSAS CITY, MISSOURI 64114-3311
(816) 523-9010

KANSAS CITY, KANSAS OFFICE

816 N. 9TH STREET
KANSAS CITY, KANSAS 66101
(913) 334-0220

# FACSIMILE TRANSMISSION

Date:             January 28, 2003

To:               Douglas Hicks

Fax:              (816) 300-7899

From:             Geoff Clark

Re:               Joshua and Nicole Tribble
                  Loan No. 1956926381

No. of pages to follow:        2

Comments:

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named below. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this facsimile message is strictly prohibited. If you have received this facsimile message in error, please immediately notify us by telephone and return the original message to us at the above address via United States Postal Services. Thank you.

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL DEPARTMENT

Chase Manhattan Mortgage Corporation )
)
Plaintiff, )
)
vs. )
)    '03 **C V 00 6 3 6**
Joshua M. Tribble; Nichole M. Tribble a/k/a Nichole )   Case No.
Michele Kopp; John Doe (Tenant/Occupant); Mary Doe )
(Tenant/Occupant); and the unknown heirs, executors, )   Court Number: _1_
administrators, devisees, trustees, creditors and assigns )
of any deceased defendants; the unknown spouses of )   Pursuant to K.S.A. Chapter 60
any defendants; the unknown officers, successors, )
trustees, creditors and assigns of any defendants that )   Title to Real Estate Involved
are existing, dissolved or dormant corporations; the )
unknown executors, administrators, devisees, trustees, )
creditors, successors and assigns of any defendants that )
are or were partners or in partnership; the unknown )
guardians, conservators and trustees of any defendants )
that are minors or are under any legal disability; and the )
unknown heirs, executors, administrators, devisees, )
trustees, creditors and assigns of any person alleged to )
be deceased, and all other persons who are or may be )
concerned. )

Defendants.

## PETITION TO FORECLOSE MORTGAGE

COMES NOW Plaintiff, Chase Manhattan Mortgage Corporation, a corporation, by and

through its attorney, Kristen G. Stroehmann of the firm of South & Associates, P.C., and for its

cause of action against Defendants states as follows:

    1.  Plaintiff is a business organization created and existing by virtue of law.

    2.  Joshua M. Tribble and Nichole M. Tribble a/k/a Nichole Michele Kopp are residents

of Johnson County, Kansas, and may be served with process at 8110 W. 149th Terrace,

Overland Park, KS 66223.

**EXHIBIT**

_____
tabbies   ()

File No. 27838          1

3.   John Doe (Tenant/Occupant) and/or Mary Doe (Tenant/Occupant) may be served with process at 8110 W. 149th Terrace, Overland Park, KS  66223.

4.   Plaintiff seeks to serve by publication all those unknown parties as set forth in K.S.A. §60-307.

5.   On November 19, 1998, Joshua M. Tribble and Nichole M. Tribble executed and delivered a promissory note (the "Note") to Crossland Mortgage Corp., in exchange for good and valuable consideration, in the principal sum of $125,400.00, together with interest.  A copy of the Note is attached as Exhibit "A" and incorporated by reference.  The Note provides that the principal and interest are payable in monthly installments until fully paid.

6.   On November 19, 1998, Joshua M. Tribble and Nichole M. Tribble executed and delivered a mortgage (the "Mortgage") to Crossland Mortgage Corp., to secure repayment of the Note.  A copy of the Mortgage is attached as Exhibit "B" and incorporated by reference.  The Mortgage was secured by real estate legally described as: **Lot 2, Block 3, BRITTANY HIGHLANDS, a subdivision in the City of Overland Park, Johnson County, Kansas**, commonly known as 8110 W. 149th Terrace, Overland Park, KS 66223 (the "Property").

7.   The Mortgage was recorded on November 23, 1998, Document No. 2914883, in Book No. 5944, at Page 832, in the office of the Register of Deeds of Johnson County, Kansas.  The mortgage registration tax was paid in full.

8.   John Doe (Tenant/Occupant) and/or Mary Doe (Tenant/Occupant) are named by virtue of his/her occupancy of the Property.  Any interest that John Doe and/or Mary Doe have in the Property is junior and inferior to Plaintiff's Mortgage.

9.   Chase Manhattan Mortgage Corporation is now the owner and holder of the Note and Mortgage.  The Mortgage constitutes a first and prior lien against the Property.

10. None of the Defendants are subject to the provisions of the Soldier's and Sailor's Civil Relief Act of 1940, as amended.

11. Joshua M. Tribble and Nichole M. Tribble failed to make the installment payments as they became due since June 1, 2002. The payments on the Note still remain due and owing. Pursuant to the terms of the Note and Mortgage, Plaintiff has declared the entire indebtedness due and payable as follows: **a)** the unpaid principal balance of the Note in the sum of $120,864.16; **b)** the unpaid interest accruing at the rate provided in the Note from and after May 1, 2002; **c)** all sums advanced by Plaintiff for title evidence in bringing this action; **d)** all sums advanced or to be advanced by Plaintiff prior to sale for real estate taxes and hazard insurance premiums; **e)** accrued late charges; **f)** all sums paid by Plaintiff or due from the Defendant prior to sale for insufficient funds charges, property inspections or property maintenance expenses; and **g)** the costs of this action, including reasonable attorney fees, if allowed.

12. Plaintiff is entitled to have its Mortgage foreclosed as a first and prior lien upon the Property. All of the defendants have or may claim to have some right, title or interest in or to the Property, but any such claim is inferior and subject to the lien of Plaintiff's Mortgage and should be so adjudged.

13. Less than one-third of the original principal amount of the Note and Mortgage has been paid, and therefore the Defendants' redemption period should be fixed at 3 months from the date of the Sheriff's sale. Once the redemption period has expired, Plaintiff or the holder of the Certificate of Purchase shall be entitled to a writ of assistance directing the Sheriff to immediately place it or the holder in possession of the Property and its improvements.

14. If any Defendant Borrower is or has been a chapter 13 bankruptcy debtor, and the Plaintiff has obtained relief from the automatic stay imposed by 11 U.S.C. §362 in a bankruptcy proceeding, and thereafter Defendant Borrower converted to a chapter 7 and a discharge was granted, that Defendant Borrower will have no personal liability in this action. If the Defendant

Borrower was a Chapter 7 debtor and this debt was listed in Defendant Borrower's schedules and not reaffirmed, and thereafter a discharge was granted, then that Defendant Borrower will have no personal liability in this action.

WHEREFORE, Plaintiff prays for judgment against Joshua M. Tribble and Nichole M. Tribble in the sum of $120,864.16, together with interest thereon at the rate provided in the Note from May 1, 2002, to the date of judgment, and thereafter at the highest rate provided by law until paid; all sums advanced by Plaintiff for title evidence in bringing this action; the sum of $110.00 for filing costs; reasonable attorney fees if provided for by statute; all sums paid by Plaintiff or due from the Defendant prior to sale for late charges, insufficient funds charges, property inspections or maintenance expenses; and all sums advanced or to be advanced by Plaintiff prior to the sale for real estate taxes and insurance premiums.

Plaintiff further prays that its Mortgage be declared a first and prior lien on the Property; that its Mortgage be foreclosed; that all junior and inferior liens and mortgages be barred from claiming any right, title, or interest in the subject property; that the Court order and direct the sale of the Property according to law, subject to a legal redemption period of **3** months, for the satisfaction of the money judgment or any balance remaining unpaid; for possession of the Property after the redemption period has expired; and for such other relief as the Court may deem just and equitable.

SOUTH & ASSOCIATES, P.C.

Kristen G. Stroehmann  (KS #10551)
4600 Madison, Suite. 801
Kansas City, Missouri  64112
(816) 300-7800, extension 114
(816) 300-7899  (Fax)

ATTORNEYS FOR PLAINTIFF

**THE LAW FIRM OF SOUTH & ASSOCIATES, P.C., A DEBT COLLECTOR, IS ATTEMPTING TO COLLECT A DEBT AS DEFINED BY THE FAIR DEBT COLLECTION PRACTICES ACT AND ANY INFORMATION OBTAINED BY THE LAW FIRM WILL BE USED FOR THAT PURPOSE.**

# NOTE

71808244

Loan #: 0012313854

November 19th, 1998      OVERLAND PARK      , Kansas
[Date]                [City]

8110 W 149TH TERRACE, OVERLAND PARK, KS  66223
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  125,400.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is CROSSLAND MORTGAGE CORP.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.250  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the  1st  day of each month beginning on  January 1st , 1999 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  December 1st  2028 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3902 SOUTH STATE STREET, SALT LAKE CITY, UTAH 84107 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $  855.45

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15 (Fifteen) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.

KANSAS FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT      Form 3217 12/83

Page 1 of 2

-5(KS) (9305)      VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Initials

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

FOR VALUE RECEIVED, Pay to the order of

Without Recourse

CrossLand Mortgage Corp

By: _____
Barbara J. Dahmen
Title: Assistant Secretary

_____ (Seal)
JOSHUA M TRIBBLE                           -Borrower

_____ (Seal)
NICHOLE M TRIBBLE                          -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

*(Sign Original Only)*



*STKC*
_98100808_

**2914883**

STATE OF KANSAS }
COUNTY OF JOHNSON }SS
FILED FOR RECORD
1998 NOV 23 P 4: 06 .9
SARA F. ULLMANN
REGISTER OF DEEDS

When recorded mail to:
CrossLand Mortgage Corp.
6600 College Blvd. #128
Overland Park, Kansas 66211

——————————— [Space Above This Line For Recording Data] ———————————

Loan ID: 0012313854

# MORTGAGE

REGISTRATION FEE
Amount of indebtedness $ 125,400 .00
Fee $ Same Paid this 23
day of Nov. 19 98
Registration No.

REGISTER OF DEEDS
JOHNSON COUNTY, KANSAS

THIS MORTGAGE ("Security Instrument") is given on        November 19th, 1998        . The mortgagor is
JOSHUA M TRIBBLE and NICHOLE M TRIBBLE, HUSBAND AND WIFE

("Borrower"). This Security Instrument is given to
                CROSSLAND MORTGAGE CORP.

which is organized and existing under the laws of    "The State of Utah"                        , and whose
address is  3902 SOUTH STATE STREET         , SALT LAKE CITY, UTAH 84107
                                    ("Lender"). Borrower owes Lender the principal sum of
    One Hundred Twenty Five Thousand Four Hundred and no/100--------
                                    Dollars (U.S. $   125,400.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  December 1st, 2028            .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in                        JOHNSON                        County, Kansas:
                    HIGHLANDS
    LOT 2, BLOCK 3, BRITTANY ~~ESTATES~~, A SUBDIVISION IN THE CITY OF
    OVERLAND PARK, JOHNSON COUNTY, KANSAS.

    THIS IS A PURCHASE MONEY MORTGAGE.

    Item #: NP06670003-0002
which has the address of            8110 W 149TH TERRACE, OVERLAND PARK            [Street, City],
Kansas            66223            [Zip Code] ("Property Address");

KANSAS-Single Family-FNMA/FHLMC UNIFORM
            INSTRUMENT Form 3017 9/90
*VMP* -6R(KS) (9410)            Amended 10/94
        VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                    Initials

BOOK**5944**PAGE**832**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

BOOK**5944**PAGE**833**

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3017 9/90

Initials

VMP -6R(KS) (9410)                    Page 4 of 6

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney fees, to the extent allowed by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**23. Waiver of Redemption.** Borrower waives all rights of redemption to the extent allowed by law.

Form 3017 9/90

Initials

-6R(KS) (9410)

Page 5 of 6

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider  ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider            ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ V.A. Rider               ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
JOSHUA M TRIBBLE                                   -Borrower

_____ (Seal)
NICHOLE M TRIBBLE                                  -Borrower

_____ (Seal)        _____ (Seal)
                     -Borrower                                   -Borrower

**STATE OF KANSAS,**            JOHNSON              County ss:

BE IT REMEMBERED, that on this    19th    day of    November    , 1998    , before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared
    JOSHUA M TRIBBLE and NICHOLE M TRIBBLE

, to me personally known to be the same person(s) who executed the above and foregoing instrument of writing, and duly acknowledged the execution of same.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal on the day and year last above written.

My Commission Expires:    11/26/98

_____
Notary Public

ELLEN B. DAVIS
_____
Type Name

ELLEN B. DAVIS
Notary Public-Notary Seal
STATE OF KANSAS
Johnson County
My Commission Expires November 26, 1998

-6R(KS) (9410)                Page 6 of 6                Form 3017   9/90

BOOK5944PAGE837